### COMMONWEALTH *vs.* MARTIN HOYE.

An indictment on *St.* 1855, *c.* 405, § 1, which avers that the defendant kept and maintained a building for the illegal sale and keeping of intoxicating liquors on a day named "and on divers other days and times between that day and the day of finding this indictment," sufficiently charges a nuisance during the whole time.

Upon the trial of an indictment under *St.* 1855, *c.* 405, for keeping and maintaining a build-

ing for the illegal sale and keeping of intoxicating liquors, it appeared that the building contained a front shop where groceries only were sold, and a back shop where liquors were sold; many sales of liquor and other articles were shown to have been made, but none by the defendant, except once of some oats in the front shop; it appeared that the same person sold groceries in the front and liquor in the back shop; the defendant was often in the front shop, but was not proved to have been behind the counter, nor to have been in the back shop but once, when he went with a constable who had come to the building with a warrant to arrest another person, and told that person to go with the constable before the justice, and went with them, and told the justice who issued the warrant that he had half a dozen more boys; and afterwards told a constable that another person sought was not in the back shop, but he might look for him there if he wished. *Held,* that there was sufficient evidence to be submitted to the jury.

INDICTMENT on *St.* 1855, *c.* 405, alleging that the defendant at Taunton, " on the first day of March in the year of our Lord eighteen hundred and fifty six, and on divers other days and times between that day and the day of finding this indictment," kept and maintained a certain building, then and there used for the illegal sale and illegal keeping of intoxicating liquors.

At the trial in the court of common pleas before *Briggs,* J., the defendant objected to the admission of evidence of any acts that did not occur on the 1st of March 1856. But the court admitted evidence of illegal sale and keeping between said 1st of March and the day of finding the indictment. The only evidence tending to show that the defendant kept or maintained the building as alleged was the following :

" No acts of sale of liquor by the defendant were shown, but it appeared that he was frequently in the shop described, generally sitting down, doing nothing. It did not appear that he was ever behind the counter in said shop ; but all the acts of sale or delivery of liquor were shown to have been made by some other person ; and it was shown that all acts of sale of any article in the shop, except as hereinafter mentioned, were made by other persons than the defendant. Many instances were shown of farmers selling vegetables and other articles in said shop ; but in every instance said sales were made to a man by the name of Thomas Hoye.

" It was shown that in one instance the defendant delivered and took pay for half a peck of oats, which stood outside the counter, in the shop. What the defendant did with the money received by him for the oats did not appear. It ap-

peared that in the building described there were two shops or rooms, with an entry between them. The front shop contained groceries, but no liquor. The back shop contained liquor, and it was in this place that all the acts of illegal sale or keeping of liquor were shown. There was an entrance from outside the building into the back shop, by passing through the entry. There was evidence that the same persons, who sold liquor in the back shop, sold groceries in the front shop.

" The defendant was never shown to have been in the back shop but once, and on that occasion a constable with a warrant for the arrest of Michael Hoye went into the front shop and told the defendant (who was there) that he had a warrant against Michael Hoye for selling liquor, and then went into the back shop, and the defendant followed him, and asked the name of the witness stated in the warrant, and told Michael to go with the constable, and then accompanied them to the office of the justice who issued the warrant. On coming into the presence of the justice, the justice said to the defendant, ' Well, Mr. Hoye, we have got one of your boys; ' to which the defendant replied, that there were ' half a dozen more of them.'

" At another time it appeared that the constable went to said shop with a capias for a person by the name of Pratt, and asked the defendant if Pratt was there, and asked for liberty to go into the back room ; the defendant said he was not there, and told the constable he might go into the back room to look for him if he wished."

The defendant asked the court to instruct the jury that this evidence was not sufficient to warrant their finding that he kept and maintained said building as alleged. But the court declined so to instruct the jury, and instructed them that the question was for them, and that there was evidence from which they might find that the defendant did keep and maintain said building. The defendant was convicted and alleged exceptions.

*C. I. Reed*, for the defendant. 1. There is no proper averment of one continuing offence in the indictment. Either the indictment is bad for duplicity, or else a part of the averment of time must be rejected as surplusage, leaving it with an offence well

charged on the 1st of March 1856 only. *Pierce* v. *Pickens*, 16 Mass. 470. *English* v. *Purser*, 6 East, 395. *Commonwealth* v. *Bryden*, 9 Met. 137. *Commonwealth* v. *Elwell*, 1 Gray, 463. *Monkton* v. *Ashley*, 6 Mod. 38, and 2 Salk. 638. 1 Saund. 24, note. 2 Rol. Ab. 541, pl. 1.

2. The evidence would not warrant the jury in finding a verdict against the defendant, and so the court should have instructed them. *Commonwealth* v. *Packard*, 5 Gray, 101.

*J. H. Clifford*, (Attorney General,) for the Commonwealth.

DEWEY, J. 1. We have had occasion to consider the question as to this form of alleging the time of the commission of the offence, and find that the mode adopted in this indictment is sanctioned by precedent as well as long practice. It has been the usual form in indictments against parties charged with being common sellers of spirituous liquors, beginning with the case of *Commonwealth* v. *Pray*, 13 Pick. 359. It seems to be the common form in which nuisances of this character are alleged as to the time of the alleged offence.

There seems to be less technical accuracy in this as a description of one continued offence, than to allege that the defendant kept and maintained the building for the alleged illegal purposes " on the first day of March, and from thence hitherto to the day of finding this indictment ; " but it will be found to be well sanctioned in criminal indictments for nuisance. This count thus properly charging a nuisance from the first day of March to the day of finding the indictment, it was competent for the government to offer proof of any act during the entire period thus stated in the indictment.

2. The further question was as to the sufficiency of the evidence in the case to establish the guilt of the defendant. There was evidence proper to submit to the jury for their consideration ; and the judge was not required to instruct the jury that the evidence was not sufficient to warrant their finding that the defendant kept and maintained the building as alleged in the indictment. It was peculiarly a case for the jury, and not for the court, upon the question whether the defendant or some other person was the party who kept and maintained the building. *Exceptions overruled.*